Commonwealth *v.* Pennsylvania Railroad Co.,
Appellant.

Argued March 19, 1928, reargued December 3, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Owen J. Roberts,* of *Roberts & Montgomery,* on re-argument, with him *Ulric J. Mengert, John McI. Smith,* of *Nauman & Smith,* and *H. S. P. Nichols,* for appellant.— The tax imposed by the Commonwealth on capital stock is a tax on the property and assets of the corporation issuing such stock: Com. v. Oil Co., 101 Pa. 119, 145; Fox's App., 112 Pa. 337; Com. v. R. R., 165 Pa. 44; Com. v. R. R., 188 Pa. 169, 189; Depuy v. Johns, 261 Pa. 40; Pullman's Palace Car Co. v. Penna., 141 U. S. 18, 25; D., L. & W. R. R. v. Penna., 198 U. S. 341.

Since the capital stock tax is a tax on property, it cannot include property which is otherwise exempt from taxation: D., L. & W. R. R. v. Penna., 198 U. S. 341; Com. v. Fall Brook Coal Co., 156 Pa. 488; Com. v. Gas

Co., 162 Pa. 602; Com. v. Lehigh Coal & Navigation Co., 162 Pa. 603.

Appellant is subjected to double taxation unless full credit is given for capital stock taxes paid on the stock of other corporations owned by it: Com. v. Fall Brook Coal Co., 156 Pa. 488.

The proportionate method used in calculating the deduction for property beyond the reach of the taxing power does not give this full credit.

The Commonwealth cannot levy a tax on the capitalized cost of betterments, additions and improvements to physical property in New Jersey leased by appellant.

The legislature did not intend to impose double taxation: Com. v. Fall Brook Coal Co., 156 Pa. 488; Com. v. Converting Works, 286 Pa. 545; Callery's App., 272 Pa. 255; Fidelity Co. v. Loughlin, 139 Pa. 612; Com. v. Fall Brook Coal Co., 156 Pa. 488.

*John Robert Jones,* special counsel, with him *Thomas J. Baldrige,* Attorney General, for appellee.—The Act of July 22, 1913, P. L. 903, the act in force in the year 1923, and which is an amendment of the Act of June 8, 1891, P. L. 229, as amended, imposes the capital stock tax with reference to and on all of the property and assets of the corporation subject to the said tax within the jurisdiction of the state, except such property and assets as are granted an exemption from the tax by legislative enactment.

Shares of stock owned by a domestic corporation subject to the capital stock tax are an asset of such corporation which enters into the determination of the taxable value of the capital stock of such owning corporation irrespective of the fact that the corporation which issued such shares of stock is subject to or relieved from the payment of the capital stock tax or its capital stock cannot be taxed because situate outside of the state, the legislature not having granted to such asset an exemption from the capital stock tax.

The inclusion of the value of the shares of stock owned by a domestic corporation as an asset in the determination of the taxable value of the capital stock of such owning corporation does not impose double taxation by reason of the fact that the corporation which issued such shares is subject to or relieved from the payment of the capital stock tax, and though it were double taxation it would be immaterial to the issue by reason of the validity of the above stated propositions.

The appellant, therefore, in view of the above stated propositions, was not subjected to double taxation and was not aggrieved by the settlement of the capital stock tax as made by the administrative officials of the state and by the judgment of the lower court, and is without legal grounds upon which to base an attack upon the validity of the tax settlement with reference to such assets or upon the validity of the method of the settlement: Com. v. Land & Imp. Co., 156 Pa. 455; Com. v. Water Co., 284 Pa. 180; Harrisburg v. Cemetery Assn., 293 Pa. 390; Com. v. Converting Works, 286 Pa. 545; Com. v. Furnace Co., 268 Pa. 283.

OPINION BY MR. JUSTICE SCHAFFER, September 30, 1929:

The Pennsylvania Railroad Company appeals from the amount of capital stock taxes assessed against it for the year 1923 as fixed by the accounting officers of the Commonwealth and confirmed by the court below, claiming that it will be required to pay $587,916.92 more than there is legal warrant for.

On the reargument of the case, which we ordered, appellant's contentions were presented along somewhat different lines from those followed on the original hearing; some positions then assumed were abandoned and certain claims for deduction were given up. The problem, which was a somewhat complicated one, has been much simplified. We now have to deal with only two propositions.

There was included by the Commonwealth as a taxable asset the sum of $25,204,943.85, representing expenditures made by the Pennsylvania Railroad Company for construction, betterments, and improvements of railroad properties located outside this state and leased to it by the United New Jersey Railroad and Canal Company under a 999 year lease, the expenditures being required to be made under the terms thereof. Appellant contends that this item should not be included as a taxable asset. The court below included it, because it found, under the stipulation of facts filed, that the sum named represented the agreed-upon value of the lease. Appellant urges that this was error, that there was no agreement as to the value of the lease. In the stipulation of facts filed, it is set forth that, under the terms and conditions of the lease, appellant "has spent various amounts for construction, betterments and improvements of that railroad property in New Jersey; much construction, betterments and improvements being a part of the railroad properties in New Jersey and are owned by the said lessors.......The sum of such expenditures for said construction, betterments and improvements amount in the aggregate at the end of the year 1923 to $25,204,943.85. For the purpose of this appeal the value of this asset under the terms and conditions of said lease and contract......is the said amount of $25,204,943.85." From this stipulation and what was stated at bar in the oral argument, we conclude that the sum named does not represent the agreed-upon value of the lease, but the amount which appellant has spent upon the physical property of its lessor in New Jersey. Moreover, the lease of the New Jersey lines was not listed among the company's assets on the balance sheet. Hence it is, the present appeal raises no question in regard to the value of the lease or to its taxability. The only thing, therefore, to be decided is whether the Commonwealth has the power to tax the cost of improvements to physical prop-

erty in another state and it must be determined that it has not: Delaware, Lackawanna & Western R. R. Co. v. Pennsylvania, 198 U. S. 341. Whether such a specific interest in property located in another state can be taxed here may be a serious question, but it does not arise on this record. This feature of the case we leave open for determination by the court below if further evidence is produced.

The second question to be determined grows out of the fact that the Pennsylvania Railroad Company owns the capital stock of other corporations valued at $146,-291,873, upon which a capital stock tax has already been paid to the state. Is it entitled to a full credit for the taxes paid or only a proportionate deduction? It is the contention of the Commonwealth that appellant's capital stock taxes are to be settled under what is termed the "proportionate method" which had our sanction in Com. v. Union Shipbuilding Co., 271 Pa. 403. In the shape of the formula which the Commonwealth uses it is:

$$\frac{\text{Miles in Pennsylvania}}{\text{Total Mileage}} \times \frac{\text{Taxable assets}}{\text{Total Assets}} \times \frac{\text{Value of the}}{\text{Capital}} = \frac{\text{Taxable value}}{\text{of the}} \\ \text{Stock} \quad \text{Capital Stock}$$

The purpose of the "proportionate method" is to arrive at a money figure for certain nontaxable assets whose ratio to the total value of those nontaxable assets is the same as the ratio of the appraised value of the capital stock of the corporation, to the total value of all the assets. Without going into the arithmetical calculations which this formula in figures requires, it is sufficient for our present purpose to say that admittedly capital stock taxes have been paid to the Commonwealth on the $146,291,873 of stock of other corporations owned by appellant at the rate of five mills on the dollar or $731,459.37. Applying the "proportionate method" and the formula resulting from it, appellant receives a credit for the taxes paid of only $173,421.77,

or a difference of $558,037.60. This attempt to apply the rule of the Union Shipbuilding Case, to the present situation, would result as shown by the figures just given, in causing a large proportion of those assets in effect to pay the same capital stock tax a second time, and hence is somewhat startling in view of what we have repeatedly said about double taxation. In that case, we were not dealing with the allowance of a credit for a tax already paid, but with a deduction from assets beyond the reach of the taxing power, such as physical property in another state and United States bonds. The formula would fit that situation but not the one in hand. It is argued by the Commonwealth that unless the proportionate method be applied, the capital stocks in question will not bear their proportion of the indebtedness of the Pennsylvania Railroad Company, although part of its assets. Even if this be so we do not regard it as a controlling consequence. The important thing is that on the capital stock of the corporations in question a capital stock tax has already been paid, and to charge those stocks with a proportion of the debts in question would in effect indirectly tax them again. A capital stock tax is in effect a tax on the shares of the individual owners although collected from the corporation; the ultimate burden rests on them: Com. v. Fall Brook Coal Co., 156 Pa. 488. Not by the rule laid down in the Union Shipbuilding Case but by that laid down in Com. v. Fall Brook Coal Co., 156 Pa. 488, is appellant's tax liability to be arrived at so far as the ownership of the shares of capital stocks of corporations which have already paid a capital stock tax is involved. In that case, the Fall Brook Coal Company owned certain shares of stock in the Fall Brook Railway Company. The Railway Company paid its capital stock taxes. In making its capital stock return, the coal company did not include therein the capital stock of the railway company which it owned and upon which the capi-

tal stock tax had been paid. The taxing authorities, however, settled a tax against the coal company, charging it with an additional tax of $11,083.33, upon the value of the shares of the railroad company owned by it. The coal company appealed from this additional charge, claiming it to be in duplication of the one already made against and paid by the railway company. It was held by the lower court that the coal company was not exempt from taxation upon any part of its capital stock because of the fact that it had invested in the shares of the railway company, although the latter had paid a tax on its capital stock for the same tax year. In reversing, speaking through Mr. Justice WILLIAMS, this court said (p. 495) : "It is clear, therefore, that to tax the capital stock in the hands of the corporation, and then tax the owners of the parts or shares into which it is divided, upon their respective holdings in the same capital, is double taxation pure and simple...... An intent to impose double taxation will not be presumed.......The presumption is against the existence of such an intention, and this presumption will prevail unless it is overcome by express words showing an intent to impose double taxation...... [p. 498]. It [to tax the shares of the railroad company] would be a clear case of double taxation without any expressed intention on the part of the Legislature to impose double taxation, and in the face of the legal presumption that no such intention exists...... [p. 499]. The shares of stock in the Fall Brook Railway Company are not taxable in the hands of their holders because they have already paid the state tax through the corporation, and are excepted in express words from the liability to tax in the hands of the holder by the first section of the Act of 1889." This decision was reiterated the following year in Com. v. United Gas Improvement Co., 162 Pa. 602, and Com. v. Lehigh Coal & Navigation Co., 162 Pa. 603. We recognized the principle that there is double taxation, under circumstances

such as exist in the instant case, in Com. v. Sunbury Converting Works, 286 Pa. 545, where we said: "It [Com. v. Westinghouse Air Brake Co., 251 Pa. 12] contravenes the public policy of the state, which, as shown by all our pertinent legislation, has been to tax such assets [namely, shares of stock of other corporations] by whomsoever held in our state, *except in the single instance where we have already taxed them by taxing the corporation issuing the shares*"; and in Callery's Appeal, 272 Pa. 255, where we said (p. 260): "Corporate tax is a levy by the state against the capital stock, as its value is computed from the assets less such as are nontaxable, *exempt or on which a state tax has been paid.*" "Double taxation is never to be implied unless the implication is unavoidable": Fidelity, etc., Co. v. Lockland, 139 Pa. 612, 621.

It is argued by appellee that the decision in Com. v. New York, Penna. & Ohio R. R. Co., 188 Pa. 169, is inconsistent with the Fall Brook Case. We cannot, however, so read it. The former recognized and in no way qualified the latter case. The question before the court in Com. v. Railroad was one of valuation of assets. No question there arose in regard to a tax upon shares of stock in corporations already taxed. In Com. v. Shenango Furnace Co., 268 Pa. 283, the Fall Brook Case was cited with approval and favorably commented upon. Under the provisions of the taxing act (Act July 15, 1919, P. L. 948) three criteria are prescribed for determining the value "not less, however, than first, the average which said stock sold for during the year; and second, not less than the price or value indicated or measured by net earnings, or by the amount of profit made, and either declared in dividends, expended in betterments, or carried into the surplus or sinking fund; and third, not less than the actual value indicated or measured by consideration of the intrinsic value of its tangible property and assets, and of the

value of its good will and franchises and privileges, as indicated by the material results of their exercise, *taking also into consideration* the amount of its indebtedness." So that the value of capital stock is not a matter of strict formula but a matter of judgment. "Common sense and practical every-day business experience are the best guides for those entrusted with the administration of tax laws. Taxation is a practical and not a scientific problem:" Phila. & Reading Coal & Iron Co. v. Northumberland County Commrs., 229 Pa. 460, 471.*

We reach the conclusion that the Fall Brook case is of controlling authority here, and therefore that appellant is not liable to pay to the Commonwealth, either directly or indirectly, a capital stock tax on the stock of the other corporations which it owns and on which there has already been paid a capital stock tax, and therefore, in giving effect to the fact that such payment has been made to the State, those shares of stock are not to have charged against them any proportion of the indebtedness of the Pennsylvania Railroad Company.

The judgment of the court below is directed to be modified in accordance with the views herein expressed.

---

* See also Farmers Loan & Trust Co., Executors, v. State of Minnesota, decided by the Supreme Court of the United States, January 6, 1930.